Paul L. More, SBN 228589
F. Benjamin Kowalczyk, SBN 316796
McCRACKEN, STEMERMAN & HOLSBERRY
595 Market Street, Suite 800
San Francisco, California 94105
Tel. No.:      (415) 597-7200
Fax No.:      (415) 597-7200
E-mail:        pmore@msh.law

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 396,<br><br>Petitioner,<br>vs.<br><br>NASA SERVICES, INC.; and DOES I through X,<br><br>Defendants. | Case No.: 2:18-cv-03681-KS<br><br>**TEAMSTERS LOCAL 396's REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date: August 27, 2018, 1:30 p.m.<br>Judge: Hon. Stephen Wilson<br>Location: Courtroom 10A |

# **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................2

I.     The Parties' Dispute Must Be Heard by Their Chosen Arbitrator. ......................2

  A.   NASA's "contract formation" argument is contradicted by the LPA's language and its own actions. ................................................................................2

  B.   *Granite Rock* does not apply to this case because there is no contract-formation dispute. ..................................................................................................6

  C.   The City "entered into" the franchise agreement on December 13, 2016 when it directed the relevant official to sign it. ......................................................9

II.    NASA Waived Any Challenge to Arbitration Under the LPA......................... 11

III.   Ninth Circuit Precedent Forecloses NASA's Timeliness Challenge............... 12

CONCLUSION ......................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Adams v. Souzzi,*
   433 F.3d 222 (2d Cir. 2005) ...................................................................7

*Alpha Beta Food Markets v. Retail Clerks Union Local 770,*
   291 P.2d 433 (Cal. 1956) .......................................................................2

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
   475 U.S. 643 (1986).................................................................................9

*Bhd. of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate*
   *Distrib. Co.,* 832 F.2d 507 (9th Cir. 1987) ............................................7

*Brant v. Bigler,*
   208 P.2d 47 (Cal. 1949) ..........................................................................9

*Burgoon v. Narconon of N. California,*
   125 F.Supp.3d 974 (N.D. Cal. 2015) .....................................................6

*California Trucking Ass'n v. Teamsters, Local 70,*
   679 F.2d 1275 (9th Cir. 1981) ..............................................................11

*Christian Mut. Life Ins. Co. v. Penn Mut. Life Ins. Co.,*
   163 F.Supp.2d 260 (S.D.N.Y. 2001) (Rakoff, J.)....................................8

*Epic Sys. Corp. v. Lewis,*
   138 S. Ct. 1612 (2018).............................................................................2

*First Street Plaza Partners v. City of Los Angeles,*
   65 Cal.App.4th 650 (1998) ...............................................................9, 10

*Camping Construction Co. v. District Council of Iron Workers,*
   915 F.2d 1333 (9th Cir.1990) .................................................................7

*Granite Rock Co. v. Teamsters,*
   561 U.S. 287 (2010).........................................................................1, 6, 8

*Gwilliam v. ProMedia, Inc.,*
   No. SA-CV-1700584, 2017 WL 8220429 (C.D. Cal. May 5, 2017).......6

ii

*IATSE, Local 720 v. InSync Show Prods., Inc.*,
  801 F.3d 1033 (9th Cir. 2015) ...............................................................8

*Int'l Chem. Workers Union v. Columbian Chemicals Co.*,
  331 F.3d 491 (5th Cir. 2003) ...............................................................2

*Kelly v. Romines*,
  No. 11-CV-00233, 2011 WL 13227935 (C.D. Cal. May 27, 2011)....................3, 4

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ...............................................................2, 6

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
  No. 14-CV-02857-WHO, 2014 WL 6882421 (N.D. Cal. Dec. 5, 2014) ................7

*Lockwood v. Wolf Corp.*,
  629 F.2d 603 (9th Cir. 1980) ...............................................................3, 4

*Los Angeles Rams Football Club v. Cannon*,
  185 F. Supp. 717 (S.D. Cal. 1960)...........................................................4

*In re Marriage of Hasso*,
  229 Cal.App.3d 1174 (1991) ...............................................................3

*Milenbach v. C.I.R.*,
  318 F.3d 924 (9th Cir. 2003) ...............................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)...............................................................................2

*Okada v. Whitehead*,
  No. SACV151449JLSKES, 2016 WL 9448482 (C.D. Cal. Nov. 4,
  2016) ...............................................................................................9

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010)...............................................................................8

*Roth v. Garcia Marquez*,
  942 F.2d 617 (9th Cir. 1991) ...............................................................4

*Sanford v. MemberWorks, Inc.*,
  483 F.3d 956 (9th Cir. 2007) ...............................................................6, 7

iii

*SEIU United Healthcare Workers-W. v. Los Robles Reg'l Med. Ctr.*,
   812 F.3d 725 (9th Cir. 2015) ................................................................ 1, 12, 13, 14

*Taylor Bus Serv., Inc. v. San Diego Bd. of Educ.*,
   195 Cal.App.3d 1331 (1987) .................................................................4

*Textile Workers Union v. Lincoln Mills*,
   353 U.S. 448 (1957)..............................................................................2

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
   925 F.2d 1136 (9th Cir. 1991) ..............................................................6

*Torres v. City of Montebello*,
   234 Cal. App. 4th 382 (2015) ..............................................................10

*Transdyn/Cresci v. City & County of San Francisco*,
   72 Cal.App.4th 746 (1999) ..................................................................10

*United Paperworkers Int'l Union v. Misco*,
   484 U.S. 29 (1987)................................................................................2

*United Steelworkers v. American Mfg. Co.*,
   363 U.S. 564 (1960)..............................................................................2

*Williams v. City of Stockton*,
   195 Cal. 743, 235 P. 986 (1925)..........................................................10

*Yedor v. Ocean Accident & Guarantee Corp.*,
   85 Cal.App.2d 268 (1948) ....................................................................4

**Statutes**

Federal Arbitration Act ...................................................................................2

Labor Management Relations Act § 301, 29 U.S.C. § 185 ...........................2

Los Angeles Municipal Code Section 66.33.6(c)...........................................5

National Labor Relations Act § 7 ..................................................................2

# INTRODUCTION

NASA is trying to take advantage of happenstance to avoid its contractual obligations to the Union.  As the Union demonstrates, the City "entered into" its franchise agreement with NASA, within the meaning of NASA's and the Union's separate Labor Peace Agreement ("LPA"), on December 13, 2016.  The only act remaining after that point was the Board of Public Works President's purely ministerial act of affixing his signature.

The question in this motion is not the merits, however, but whether the parties' dispute is arbitrable.  NASA relies primarily on *Granite Rock Co. v. Teamsters*, 561 U.S. 287 (2010).  But the parties' dispute is not about contract formation.  NASA acknowledged that it had formed a contract with the Union when it responded to the City's RFP by verifying that "[t]he Company is party to an agreement with Teamsters Local 396 that meets the definition of a Labor Peace Agreement."  Doc. 23-3, Exh. 4.  The parties have a dispute about whether the LPA "*became* null and void" by operation of the LPA because the City "failed to enter into an exclusive franchise agreement" before December 31, 2016.

The parties agreed to a broad arbitration clause, under which "any disputes over the interpretation or application of this agreement shall be submitted to expedited and binding arbitration."  Doc. 1, Exh. A, ¶ 14.  It is for the parties' jointly chosen arbitrator to determine whether the agreement "became" null and void on January 1, 2017 because the Board President—who had already approved the franchise agreement and whom the City Council had directed to sign the agreement—had not yet put his signature to the document.

NASA's timeliness claim is foreclosed by Ninth Circuit precedent, which holds that the six-month statute of limitations does not start running until an employer affirmatively responds to a formal action moving a matter to arbitration. *SEIU United Healthcare Workers-W. v. Los Robles Reg'l Med. Ctr.*, 812 F.3d 725, 730 (9th Cir. 2015).

1

**ARGUMENT**

**I.  The Parties' Dispute Must Be Heard by Their Chosen Arbitrator.**

   **A. NASA's "contract formation" argument is contradicted by the LPA's language and its own actions.**

Throughout its brief, NASA argues loosely that there was a "condition precedent to formation of the LPA."  Doc. 24, at 10.  But the LPA's language and NASA's actions demonstrate that this is not so.  There was a *condition subsequent* affecting the agreement's continued validity and a condition (which the parties agree has been met) triggering the agreement's substantive provisions.

In making its argument, NASA faces two distinct burdens.  First, as "a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567-68 (1960); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013).[1]

Second, "it is the general rule in contract interpretation that stipulations in an agreement are not to be construed as conditions precedent unless such construction is required by clear, unambiguous language; and particularly so where a forfeiture would be involved or inequitable consequences would result." *Alpha Beta Food Markets v.*

---

[1] NASA includes a footnote asking the Court to overrule decades of precedent. Doc. 24, at 8 n.3. This is an action brought pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which provides federal-court jurisdiction over labor-management agreements and authorizes courts "to fashion a body of federal law for the enforcement of these . . . agreements[.]" *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 450-51 (1957).  The Federal Arbitration Act may provide "guidance" in cases covered by § 301, but courts are not obligated to follow it. *See United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 41 n. 9 (1987) ("federal courts have often looked to the [FAA] for guidance in labor arbitration cases"); *Int'l Chem. Workers Union v. Columbian Chemicals Co.,* 331 F.3d 491, 494 (5th Cir. 2003) (in cases "arising under Section 301, courts are not obligated to rely on the FAA but may rely on it for guidance").  *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612 (2018), which NASA misinterprets, had nothing to do with the role of the FAA in enforcement of LMRA § 301 contracts.  It resolved the conflict between the FAA and the right to concerted action under § 7 of the NLRA.

2

*Retail Clerks Union Local 770*, 291 P.2d 433, 437 (Cal. 1956); *In re Marriage of Hasso*, 229 Cal.App.3d 1174, 1181 (1991) ("Conditions precedent are not favored and contractual provisions will not be so construed in the absence of language plainly requiring such a construction."); *accord Lockwood v. Wolf Corp.*, 629 F.2d 603, 610 (9th Cir. 1980) ("Courts have consistently disfavored conditions precedent, and have not construed stipulations as conditions unless required to do so by unambiguous language."); *Kelly v. Romines*, No. 11-CV-00233, 2011 WL 13227935, at *2 (C.D. Cal. May 27, 2011).  Far from creating an unambiguous condition precedent to contract *formation*, the contractual provision on which NASA relies is phrased as a condition subsequent to an already-formed agreement.

Paragraph 1 of the LPA says that the "Agreement shall only become operative" if conditions named in Paragraph 15 are met.  But Paragraph 1 of the LPA does not state what those conditions are.  Doc. 1, Exh. A, ¶ 1.

For that, one must look to Paragraph 15.  Paragraph 15 contains three clauses. The first clause states: "All of the paragraphs of this Agreement are expressly conditioned on the City of Los Angeles entering into an exclusive franchise agreement or franchise agreements with the Employer for the collection of solid waste[.]"  Doc. 1, Exh. A, ¶ 15.  This is a condition precedent, although not to the contract's *formation*, but to the parties' ability to invoke the LPA's substantive provisions.  NASA does not deny that it entered into an exclusive franchise agreement with the City (it just disputes when this happened), so this condition on the LPA's substantive terms (including its arbitration clause) is met.

Second, Paragraph 15 contains a duration clause.  The LPA says that "[i]f the City enters into an exclusive franchise agreement for the collection of solid-waste with the Employer, then the terms of this Agreement shall remain in effect for three years following the effective date of the exclusive franchise agreement between the City and the Employer."  *Ibid.*  Again, NASA does not dispute that it entered into an exclusive franchise agreement with the City.

Finally, Paragraph 15 states that "[i]f the City fails to enter into an exclusive franchise agreement . . . with the Employer by December 31, 2016, then this Agreement *shall become null and void.*"  *Ibid.*  This clause is not drafted as a condition precedent to *contract formation*, and certainly is not "unambiguous language" creating a pre-condition for contract formation.  *Lockwood*, 629 F.2d at 610.  A contract that has never been formed cannot "become" null and void.

The language that the parties employed in Paragraph 15 can be contrasted to the cases that NASA cites but whose facts it fails to discuss.  In *Yedor v. Ocean Accident & Guarantee Corp.*, 85 Cal.App.2d 268, 704 (1948), for example, the relevant clause stated expressly that it was creating a condition precedent and did not use a verb tense that assumed an already formed contract: "As a *condition precedent*, this Policy *is* null and void *unless* the total initial premium stated herein is paid to the State Compensation Insurance Fund at its office in San Francisco on or before April 11, 1942, at noon, standard time."

In *Roth v. Garcia Marquez*, 942 F.2d 617, 626 (9th Cir. 1991), the relevant clause was a *signature requirement* that expressly went to contract formation: "[t]he option shall commence upon signature by Gabriel Garcia Marquez to the formal agreement and the return of said signed agreement."  This language, the Ninth Circuit held, "demonstrates that his signature was a condition precedent to the forming of a binding contract.  Since he never signed, no contract was formed."  *Ibid.*  Similarly, in *Los Angeles Rams Football Club v. Cannon*, 185 F. Supp. 717, 721 (S.D. Cal. 1960), the relevant provision stated: "'This agreement shall become valid and binding upon each party hereto only when, as and if it shall be approved by the [NFL] Commissioner.'"[2]

NASA and the Union did not employ language like this.  The parties could have easily made the December 31, 2016 date a condition for contract formation.  They

---

[2] *Taylor Bus Serv., Inc. v. San Diego Bd. of Educ.*, 195 Cal.App.3d 1331, 1337 (1987), involved compliance with a public bid specification, not interpretation of a contract.

4

would have said: "This agreement shall not be considered executed or binding unless the City enters into an exclusive franchise with NASA on or before December 31, 2016."  Instead, the language they chose speaks of the already-formed agreement "becoming" null and void.

That the parties formed a contract is also clear from NASA's actions. Astoundingly, given the importance of the fact, NASA ignores its affirmative representation to the City in 2014 that it "is party to an agreement with Teamsters Local Union No. 396 that meets the definition of a Labor Peace Agreement."  Doc. 21-3, Exh. 1.  NASA does not deny that being party to this contact was a condition of applying for and receiving a franchise.  The RFP stated:

> In accordance with Section 66.33.6(c) of the Los Angeles Municipal Code, the CONTRACTOR shall provide satisfactory evidence that it, and any SUBCONTRACTOR who will provide collection services, are a party to labor peace agreement[.]

Doc. 21-5, Exh. 2, at § 2.4.5.1.  Municipal Code § 66.33.6(c) says that a franchisee must "provide satisfactory evidence" that it is "a party to labor peace agreement" and must do so "[a]s a condition for the grant of a franchise agreement, a condition precedent to any franchisee or subcontractor performing collection services, and as an ongoing, material condition of the franchise agreement."  Doc. 21-5, Exh. 1.

NASA's owner states that "[n]o person from the BOS or the City has ever informed me that NASA was selected for a franchise agreement *because* it signed a labor peace agreement with Local 396."  Doc. 24-2, ¶ 13 [emphasis added].  But this is avoiding the issue.  No one is arguing that being party to a labor-peace agreement was a criterion for ranking bidders.  It was a baseline *requirement* of a bid package and a condition of the City entering into the franchise agreement.

NASA claims that the Union's recognition in 2015 that the agreement was not yet enforceable undermines the Union's position.  Doc. 24, at 13.  But the Union agrees that in 2015, the substantive terms of the parties' agreement could not be enforced.  That is because Paragraph 15 says that "[a]ll of the paragraphs of this

5

Agreement are expressly conditioned on the City of Los Angeles entering into an exclusive franchise agreement . . . with the Employer[.]"  Doc. 1, Exh. A, ¶ 15.  In 2015, this had not yet happened, but it had happened when the Union enforced the LPA in 2017.

### B. *Granite Rock* does not apply to this case because there is no contract-formation dispute.

Since it is clear that the parties formed a contract and their dispute is about whether a term of that contract terminated the agreement, *Granite Rock*, 561 U.S. 287, is inapplicable.  That case involved the question of when a union ratified a collective bargaining agreement, the final step in forming the agreement, not the interpretation of a clause under which an already formed agreement became "null and void."  *Id.* at 292-93.  Unlike *Granite Rock*, this case involves the interpretation of an already-formed contract's meaning, which the parties have committed to their chosen arbitrator through a broad arbitration clause.

Ninth Circuit cases following *Granite Rock* demonstrate that it is reserved to true issues of contract formation that are not present here, such as whether an individual was mentally capable of entering the contract (*Burgoon v. Narconon of N. California*, 125 F.Supp.3d 974, 983 (N.D. Cal. 2015)); whether non-signatories to an agreement could enforce its arbitration provision (*Kramer*, 705 F.3d at 1126); or whether "a draft agreement which both parties agree was never signed" was enforceable (*Gwilliam v. ProMedia, Inc.*, No. SA-CV-1700584, 2017 WL 8220429, at *2 (C.D. Cal. May 5, 2017)).  *See also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,* 925 F.2d 1136, 1139 (9th Cir. 1991) (prior to *Granite Rock*, applying similar rule to claim that contract signatory lacked authority).

NASA either fails to recite the facts in the cases on which it relies, or misrepresents their holdings.  NASA's claims that *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007), held the following: "A challenge to a contract containing an arbitration clause on the ground of a failure of a condition precedent to

formation goes directly to whether the parties formed a contract and the matter is appropriate for the court to hear, instead of an arbitrator."  Doc. 24, at 10 (purporting to quote *Sanford*, 483 F.3d at 962).  One searches *Sanford* in vain for any reference to conditions precedent.  No such passage exists.

Second, NASA relies on the decision in *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, No. 14-CV-02857-WHO, 2014 WL 6882421, at *2 (N.D. Cal. Dec. 5, 2014), but fails to describe the case's facts.  *Kum Tat* involved a condition placed explicitly on *contract formation*, not a clause saying that the agreement would "become null and void" if a condition subsequent occurred.  The contract stated:

> Seller to provide a specific exclusion and inclusion lists the same day signing Counter Offer No. Two (2) as the Record, and Buyer to *review and approve in order to Fully Ratify this Purchase Contract*.

*Ibid*. (emphasis added).  Kum Tat—the party resisting arbitration—sent a letter to the seller stating expressly that it was "exercising the review and approve clause" and that it had "disapproved the exclusion list."  *Ibid*.  The contract clause at issue went to the very formation of the contract, not whether it would "become null and void" if a condition subsequent occurred.  *See also Adams v. Souzzi*, 433 F.3d 222, 223 (2d Cir. 2005) (agreement that stated expressly that it would not apply to any labor union that "fails to ratify within 45 days" went to contract formation).

Instead of setting a condition on contract formation, the LPA provision on which NASA relies is akin to a contractual *termination* clause, the meaning of which is a matter for the arbitrator, both before and after *Granite Rock*.  *Camping Construction Co. v. District Council of Iron Workers,* 915 F.2d 1333 (9th Cir.1990) ("'[W]hen the collective bargaining agreement contains a customary arbitration clause, acts of repudiation and other acts of termination must be submitted to arbitration.'") (internal citation omitted); *Bhd. of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 512 (9th Cir. 1987) (a broad arbitration clause "includes disagreements over whether the collective bargaining agreement has been . . .

terminated"); *IATSE, Local 720 v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1042 (9th Cir. 2015) (post-*Granite Rock*, whether agreement had been terminated was for arbitrator).

The Court in *Granite Rock* warned against accepting parties' recitation of a "contract-formation" mantra in determining arbitrability. *Granite Rock*, 561 U.S. at 305 ("it is not the mere labeling of a dispute for contract law purposes that determines whether an issue is arbitrable"). This case involves NASA's claim that the LPA became "became null and void" (that is, "terminated" or "became invalid") on January 1, 2017. This "issue of the contract's validity is different from the issue whether any agreement . . . was ever concluded." *Buckeye Check Cashing,* 546 U.S. at 444 n.1; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.").[3] Even if framed as one of "condition precedent," the issue in this case involves interpretation of the LPA as a defense to enforcement, not whether the LPA was formed in the first place. *See Christian Mut. Life Ins. Co. v. Penn Mut. Life Ins. Co.*, 163 F.Supp.2d 260, 262 (S.D.N.Y. 2001) (Rakoff, J.) ("[A]n alleged failure to fulfill an expressly-stated provision of the Agreement, whether characterized as a 'condition  precedent' or otherwise, is itself a 'dispute or difference between the parties with respect to this Agreement,' and therefore entirely within the scope of what the parties expressly agreed to arbitrate.").

It may seem counter-intuitive to NASA that it should be required to arbitrate this dispute when it believes there is no valid agreement to do so. But its position is no different from a party that argues it should not be ordered to arbitrate because "the agreement was fraudulently induced" (*Buckeye Check Cashing*, 546 U.S. at 444), or is illegal (*id.* at 443), or terminated (along with its arbitration clause) (*InSync*, 801 F.3d at

---

[3] NASA's suggests that *Granite Rock* overruled or limited *Buckeye Check Cashing* and *Rent-A-Center*. See Doc. 24, at 10. But *Rent-A-Center* confirmed *Buckeye Check Cashing*'s analysis in its entirety and was decided by the same majority of Justices just three days before *Granite Rock*.

1042).  The parties here indisputably formed a contract, and they agreed that the arbitrator whom they jointly chose would arbitrate all "disputes over the interpretation or application of this Agreement."  Their dispute over whether the LPA "became null and void" is arbitrable.

### C. The City "entered into" the franchise agreement on December 13, 2016 when it directed the relevant official to sign it.

The merits of whether the City "entered" into the LPA prior to December 31, 2016 is for the arbitrator.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–50 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying [controversy] . . . [w]hether 'arguable' or not, indeed even if it appears to the court to be frivolous.").  But the arguments that NASA presents for why the LPA became void on January 1, 2017 are not well-taken.

In addressing this question, the arbitrator will avoid the clear forfeiture that would result if the LPA were invalidated based on the fact that the Board President did not fulfill his ministerial duty to sign NASA's fully approved franchise agreement until January 31, 2017.  *Milenbach v. C.I.R.*, 318 F.3d 924, 936 (9th Cir. 2003) ("Where there are two possible interpretations of a contract, one that leads to a forfeiture and one that avoids it, California law *requires* the adoption of the interpretation that avoids forfeiture, if at all possible.") (emphasis added); *Brant v. Bigler*, 208 P.2d 47, 49 (Cal. 1949) (a "construction which avoids forfeiture must be made if it is at all possible"); *Okada v. Whitehead*, No. SACV151449JLSKES, 2016 WL 9448482, at *7 (C.D. Cal. Nov. 4, 2016).

NASA points to the City Charter's provision stating that the City is not bound contractually until the relevant signatures are obtained and cites *First Street Plaza Partners v. City of Los Angeles*, 65 Cal.App.4th 650 (1998).  Doc. 24, at 15.

But the question of whether the franchise agreement would have been effective without the Board of Public Works President's signature is a different question from

9

whether the Board President had an enforceable, ministerial duty to sign it.  Under established law that applies to both general and charter cities, once directed to do so by the Board of Public Works and the City Council, the Board's President had a ministerial duty to sign the franchise agreement, and NASA could have enforced this obligation by writ of mandate.  *Torres v. City of Montebello*, 234 Cal. App. 4th 382, 397 (2015) (recognizing that mayor had "ministerial duty" to sign a waste-hauling franchise agreement "that has been approved by the city's legislative body" and that putative franchisee that "believed the Mayor was derelict in his duty to sign the Contract could have sought relief from the courts by way of a petition for writ of mandate); *Williams v. City of Stockton*, 195 Cal. 743, 748, 235 P. 986, 988 (1925) (when mayor, "as an officer of the city, was authorized and directed by the duly adopted resolution of the council to sign the same, it became his duty to do so as a duty resulting from his office.  The mayor's duty to sign the contract was ministerial only, and involved the exercise of no discretionary power[.]").  NASA tries to limit *Transdyn/Cresci v. City & County of San Francisco*, 72 Cal.App.4th 746, 753 (1999) to the wording of San Francisco's charter, but the court based its decision on "factually similar cases in which our Supreme Court concluded that a competitively bid contract for public work is awarded at the time the public entity accepts the bid, and that a public official's duty to execute such a contract is ministerial."  *Cf.* Doc. 24, at 16.

*First Street Plaza Partners v. City of Los Angeles*, 65 Cal.App.4th 650 (1998) is neither inconsistent with this line of cases, nor relevant to the dispute here.  That case involved a claim of promissory estoppel against the City, not a claim that a public official had a ministerial duty to execute a contract.  And the plaintiff's promissory estoppel claim was based not on actions approving a contract by the city council or mayor, but on a Chief Administrative Officer report that was preliminary to such approval and that expressly stated that significant areas remained to be negotiated.  *Id.* at 670 ("Neither the mayor nor the city council ever approved final contract documents

covering these and many other details under discussion.  When proposed documents were presented to the mayor and city council, they exercised their expressly reserved power to review and reject them.").

Because the Board President had a ministerial duty to sign the franchise agreement as of December 13, 2016—the date by which both the City Council and the Board had directed him to do so—the LPA did not become "null and void" on January 1, 2017.  The Union is confident that the arbitrator will agree.

## II.  NASA Waived Any Challenge to Arbitration Under the LPA.

For nearly a year after the Union provided notice of its intent to organize NASA workers under the LPA on February 14, 2017, NASA took affirmative steps intended to lead the Union to believe that NASA agreed that the LPA was in effect.  Because the Union withheld taking economic action against NASA in reliance on these affirmative representations, NASA waived its challenge and is now estopped from denying the LPA's ongoing validity.  *Cf. California Trucking Ass'n v. Teamsters, Local 70*, 679 F.2d 1275, 1284 (9th Cir. 1981) (union's delay in raising the claim estopped it from asserting that collective bargaining agreement was still in effect); *see also* Doc. 21-1, at 22-24 & n. 2.

The Court does not need to reach the issue of waiver or estoppel, since the parties' dispute is arbitrable.  But NASA argues that the Union has not presented "clear and convincing" evidence that NASA waived its claim that the LPA became null and void on January 1, 2017, and asks the Court for an evidentiary hearing on waiver if it does not agree as a matter of law.  Doc. 24, at 20-21.

If the Court reaches the issue, the Union welcomes such a hearing.  The declarations that NASA has submitted are implausible on their face.  NASA's owner would have the Court believe that a face-to-face meeting that the Union called after unfruitfully seeking to enforce its organizing rights under the LPA consisted entirely of "personal topics, such as family and our upbringings in similar neighborhoods" and that the Union never "expressed any interest in organizing NASA's employees."  Doc.

11

24-2, at 7.  Its consultant would have the Court believe that he went to a meeting at the Union's office with no idea what the meeting concerned and that when the Union brought up the LPA, "he was totally ignorant" of what the Union was talking about, even though he had been involved in the LPA's negotiation.  Doc. 24-3, at ¶ 12.  If the Court orders an evidentiary hearing, the Union will show that these and other statements are inaccurate.

## III.   Ninth Circuit Precedent Forecloses NASA's Timeliness Challenge.

NASA's timeliness argument is foreclosed by Ninth Circuit law holding that the six-month statute of limitations on a motion to compel does not begin to run until the employer rejects a formal action moving a matter to arbitration.  This is so even if the employer has asserted in previous communications that it does not intend to arbitrate. *Los Robles Med. Ctr.*, 812 F.3d at 730.  NASA relies on a district-court decision in *Los Robles Medical Center* without advising the Court of the Ninth Circuit's subsequent ruling.  Doc. 24, at 24 (*citing SEIU United Healthcare Workers-W. v. Los Robles Reg'l Med. Ctr.*, 2012 WL 12878748 (C.D. Cal. Oct. 16, 2012)).

In *Los Robles Medical Center*, the parties had a collective-bargaining agreement with a three-step grievance process, with arbitration as the final step.  The employer refused to participate in the first two steps of the grievance, communicating its position that the grievance was "not grievable and was precluded from arbitration pursuant to [the CBA]." *Los Robles Reg'l Med. Ctr.*, 812 F.3d at 728; *see also ibid.* (subsequent letter to union stating that the grievance was "not subject to the grievance and arbitration procedure of [the Agreement]").

The union again urged the employer to process the grievance.  In response, on December 2, 2011, the employer emailed the union, stating, "I am declining to process this grievance as this matter is neither grievable nor arbitrable." *Ibid.*  On December 15, the union responded, stating, "if you are refusing to schedule a step II meeting, we have no choice but to . . . move this matter to the next step (arbitration)." *Ibid.*  On January 17, 2012, the union formally moved the matter to arbitration.  The employer

12

did not respond until June 22, 2012, when it refused to arbitrate. *Ibid*. The union filed its action on September 20, 2012. *Id*. at 729.

The district court held that the statute of limitations began to run on December 2, 2011, when the employer told the union that it considered the matter to be non-arbitrable. *Ibid*. The Ninth Circuit reversed, holding that the statute of limitations could not start to run—and any refusal to arbitrate could not trigger the statute of limitations—until the union formally requested arbitration:

> Because the Union did not request arbitration until January 17, 2012, the Medical Center's December 2, 2011 email could not have been an express rejection of the Union's Step 3 request for arbitration. The Medical Center responded to the Union's request in a June 22, 2012 letter, stating it "will not arbitrate this matter." Thus, contrary to the district court's ruling, the June 22, 2012 letter was the Medical Center's unequivocal, express rejection of the Union's Step 3 request for arbitration. As a result, the statute of limitations began to run that day, on June 22.

*Id*. at 731. The Court also reiterated that an employer's *silence* in the face of a formal demand for arbitration does not trigger the limitations period, because "'[t]here is no such thing as constructive notice of an employer's refusal to arbitrate[.]'" *Id*. at 733 (*quoting Local Joint Exec. Bd. v. Exber, Inc.,* 994 F.2d 674, 676 (9th Cir. 1993)).

This case is easier than *Los Robles Medical Center* because NASA never affirmatively refused to arbitrate before the Union moved the dispute to arbitration. NASA's recitation of the facts demonstrates why the petition is timely:

> In late November 2017, Local 396 attempted to set hearing dates with Arbitrator Rappaport. On December 8, 2017, NASA's attorney stated, "There is no agreement to arbitrate. Nor is there an underlying Card-Check Agreement between NASA and Local 396. NASA and Local 396 are not parties to any agreement." On May 7, 2018, Local 396 filed this action[.]

Doc. 24, at 7. As NASA admits, the Union formally moved the matter to arbitration by contacting the Arbitrator on November 28, 2017. Doc. 24-1, Exh. 10. NASA formally rejected arbitration (and denied that it had a contract with the Union) on December 8,

2017.  The Union filed its petition to compel on May 7, 2018—four months and 29 days later.

NASA asks the Court to set an earlier trigger date for the statute of limitations, but its arguments are contrary to *Los Robles Medical Center*.  NASA argues that the union was required to petition for arbitration within six months after NASA's November 14, 2014 letter, in which it followed the LPA's requirement that the parties select an arbitrator but pointed out that enforcement of the LPA was conditioned on "the City of Los Angeles entering into an exclusive franchise agreement with the Employer, which has not occurred."  Doc. 24, at 24.  But the parties did not have a dispute about the LPA at that point, so there was nothing to arbitrate over.  The only "condition" that NASA identified in its 2014 letter was the City entering into a franchise with NASA, which *did* subsequently occur.[4]

NASA argues that its *silence* in the face of mere *threats* by the Union to go to arbitration in 2017 triggered the six-month statute of limitations.  It argues that the Union was required to petition to compel within six months of its "threat" to go to arbitration on April 10, 2017 or of its October 5, 2017 email stating that it "appears we are left with no other choice but to seek enforcement through the mechanisms provided in the LPA . . . up to and including arbitration."  Doc. 24, at 24-25.  But the court rejected this argument in *Los Robles Medical Center*, 812 F.3d at 728, where the union's statement that it "[had] no choice but to . . . move this matter to the next step (arbitration)" a month before it formally moved the matter to arbitration did not trigger the statute of limitations.

The Union formally requested arbitration on November 28, 2017.  NASA admits that it was not until December 8, 2017 that it "affirmatively took the position . . . that the LPA was null and void[.]"  Doc. 24, at 22.  The statute of limitations did not run until June 8, 2018, and the Union's petition is timely.

---

[4] NASA's argument that "[f]or the next two and one-half years until the Petition was filed, Local 396 never contended that the conditions precedent had been satisfied" is clearly false.  Doc. 24, at 24. The Union sent notice in February 2017 that the LPA was "in effect."  Doc. 24-1, Exh. 6.

14

## CONCLUSION

NASA is straining mightily to avoid its bargain with the Union.  There is no dispute that the parties formed an agreement.  Whether that agreement "became null and void" on January 1, 2017 is a matter for the parties' chosen arbitrator.  The Court should grant the Union's motion and it award its attorneys' fees under Paragraph 14 of the LPA.

Dated: August 13, 2018            Respectfully Submitted,

McCRACKEN, STEMERMAN & HOLSBERRY LLP

By:    */s/Paul L. More*
       Paul L. More
       *Attorneys for Petitioner*

15

# PROOF OF SERVICE

## STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

I am employed in the city and county of San Francisco, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is: 595 Market Street, Suite 800, San Francisco, California 94105.

On August 13, 2018 I served a copy of the following document(s) described as:

**TEAMSTERS LOCAL 396's REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

on the interested party(ies) to this action as follows:

**_By ECF System - Court's Notice of Electronic Filing:_**

L Brent Garrett
Atkinson Andelson Loya Ruud and Romo
12800 Center Court Drive South Suite 300
Cerritos, CA 90703
562-653-3200
Fax: 562-653-3333
Email: bgarrett@aalrr.com

*Attorneys for NASA Services, Inc.*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 13th day of August 2018, at San Francisco, California.

Katherine Maddux

1